UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/6/2019

EDWARD WEINBERGER,

        Plaintiff,

-against-

TOWN OF FALLSBURG, TOWN OF FALLSBURG CODE ENFORCEMENT OFFICE, and FRANK WERLITZ, in his official capacity as Code Enforcement Officer for the Town of Fallsburg Code Enforcement Office and in his individual capacity,

        Defendants.

18-CV-988 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff, Edward Weinberger ("Plaintiff"), proceeding *pro se*, brings this action against Defendants: Town of Fallsburg ("Fallsburg"), Town of Fallsburg Code Enforcement Office ("Code Enforcement Office" or "CEO"), and Frank Werlitz ("Werlitz"), (collectively, "Defendants"), who have allegedly denied Plaintiff his constitutional rights to his single family/rental property located at 5316 NY-42, South Fallsburg, NY 12779 ("Building") in Sullivan County, New York. (Complaint, ("Compl."), ECF No. 1.) Plaintiff brings this action pursuant to 42 U.S.C. Section 1983, under the Fifth and Fourteenth Amendments to the U.S. Constitution. Before the Court are two motions to dismiss filed by Fallsburg and CEO, respectively. (ECF Nos. 32, 34.) For the following reasons, both motions are GRANTED.

## BACKGROUND

The following facts, taken from the Complaint, are presumed true for deciding this motion. In addition, when ruling on motions to dismiss under Rule 12(b)(6), courts must consider the complaint, "as well as documents incorporated into the complaint by reference, and matters of

which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Staehr v. Hartford Fin. Servs. Grp. Inc*., 547 F.3d 406, 426 (2d Cir.2008). While consideration of matters outside the pleadings generally converts a motion to dismiss to a motion for summary judgment, consideration of facts for which judicial notice may be taken does not. *Apotex Inc. v. Acorda Therapeutics, Inc*., 823 F.3d 51, 60 (2d Cir. 2016); Fed. R. Civ. P. 12(d).

Courts may take judicial notice of any adjudicative fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(a)-(b). "Adjudicative facts" are "facts about the parties and their activities, businesses, and properties." *Langevin v. Chenango Court, Inc.*, 447 F.2d 296, 300 (2d Cir. 1971). "The court must take judicial notice if a party requests it and the court is supplied with the necessary information," Fed. R. Evid. 201(c)(2).

As Plaintiff repeatedly references correspondence between himself and the CEO, the condemnation notice, and a complaint made by a tenant in his Complaint, the Court takes judicial notice of these documents, which are incorporated into the Complaint by reference. The condemnation notice is also an adjudicative fact. Hence, reliance on these documents does not convert either motion to dismiss into a motion for summary judgment.

**FACTS**

Plaintiff is a resident of South Fallsburg, Sullivan County New York and the sole owner of a building that was condemned by Defendants. (Compl. ¶¶ 7, 12.) Fallsburg is the town where Plaintiff resides for part of the year and where the Building is located. (*Id*. ¶ 8.) Fallsburg, through its Town Council, adopts the Town of Fallsburg Local Code and oversees the CEO. (*Id*.) Werlitz

is the Code Enforcement Officer for the CEO, and the individual who inspected and condemned Plaintiff's building. (*Id.* ¶ 10.)

Plaintiff owns the Building and has title under his name (*Id.* ¶ 12.) His most recent ownership of the Building started in 2011, when he repossessed it after a sale. (*Id.* ¶ 13.) Plaintiff used to rent the Building to supplement his limited income, which he has not been able to do over the last two years. (*Id.* ¶ 14.)

In May 2015, the CEO and Werlitz purportedly spoke with tenants occupying the building and "encouraged" them to submit a complaint against Plaintiff (*Id.* ¶ 15.) One tenant submitted a complaint with the CEO on May 8, 2015. (*Id.* ¶ 16.) Plaintiff did not receive and see a copy of this tenants' complaint until May 11, 2015. (*Id.*) After the complaint was submitted, on May 13, 2015, Werlitz inspected the building and identified eight Building Code deficiencies. (*Id.* ¶ 17.) The eight deficiencies were: (1) No smoke detectors; (2) Exposed unprotected wiring in the junction box in the bathroom; (3) Bedroom outlets arc when plugged in; (4) Circuit breakers constantly trip; (5) Bedroom windows do not open; (6) Floors in need of repair; (7) Bathroom shows sign of water leaking in at ceiling and outside walls; and (8) Front porch appears to be in failure. (*See* Condemnation Notice, ECF No. 43, Ex C.) Some of the issues in tenants' complaint were consistent, and others inconsistent, with those building code deficiencies identified by the Defendants. (Compl. ¶ 18.)

Based on these Building Code deficiencies, on May 13, 2015 (the same day as the inspection), Defendants posted a condemnation tag on the Building. (*Id.* ¶ 19; Condemnation Notice.) The tag, signed by Werlitz, read: "VIOLATION/STOP WORK/CONDEMNED-LIFE SAFETY," and it was posted on the front door and window of the Building. (Compl. ¶ 19.) Two days later, on May 15, 2015, Plaintiff sent a letter to the CEO, requesting an explanation for why

his property was being condemned. (*Id*. ¶ 20; Plaintiff's 5/15/15Letter, ECF No. 43, Ex. C.) Soon thereafter, all the tenants moved out from the Building. (Compl. ¶ 21.) After the Building was condemned and all the tenants had supposedly left, Werlitz wrote a reply letter to Plaintiff on behalf of the CEO and attached a copy of the violation letter dated May 13, 2015 (*Id*. ¶ 21; Werlitz 5/19/15 Letter, ECF No. 43, Ex. D.)[1]

In the Werlitz letter dated May 19, 2015, he related that in addition to the condemnation by the CEO "…5316 Rt 42 has been condemned by the NYS DOL for asbestos in the basement. It is my understanding that no work is to be performed on this structure until NYS DOL has given you the all clear." (Compl. ¶ 23.) Plaintiff then wrote a follow up letter to Werlitz on May 22, 2015, in which he requested an explanation for the basis of his "understanding" and pointed out that he was not aware of any such "condemnation" by the NYS DOL. (*Id*. at 24.) Werlitz, however, purportedly disregarded Plaintiff's letter and failed to provide any further explanation. (*Id*.)

On February 28, 2015, Hudson Valley Environmental performed an asbestos contamination assessment in another building that Plaintiff owned and declared that building safe to occupy. (*Id*. ¶ 25.) After that assessment, they determined that the asbestos issue that was believed to be in the Building was also remedied, and the DOL removed the asbestos tag. (*Id*. ¶ 26.)

Plaintiff's Complaint states that most violations identified in Wertliz's letter were either false or that Plaintiff simply did not receive an opportunity to attend to them. (*Id*. ¶ 29-30.) For example, Plaintiff claims that while the deficiency notice states that he had "no smoke detectors," in reality, the detectors were simply "deactivated." (*Id*. ¶ 29.) Plaintiff claims that, similarly, upon having his Building inspected by an electrician, his electrician found no electrical failures. (*Id*. ¶

---

[1] Plaintiff claims he never received the original violation notice sent to him on May 13, 2015, and that Werlitz never responded to him or provided him with the evidence he requested. (Compl. ¶ 22.) The Court need not take such allegations as true because they are plainly contradicted by documentary evidence of which the Court takes judicial notice. *See Kleinman v. Elan Corp., plc*. 706 F.3d 145, 152 (2d Cir. 2013).

31.) In short, Plaintiff claims that the town did not handle the condemnation of his property in accordance with proper procedures under New York State Law. (*Id.* ¶ 32.) He claims that Defendants have not provided him with proper notice or given him proper process. (*Id.* ¶ 33.) Consequently, Plaintiff claims that the town *de facto* took Plaintiff's Building, denying him just compensation and due process. (*Id.* ¶¶ 34-35.)

Plaintiff has lost rental income and has not been able to utilize his building since May 2015, which has forced him to "endure hardship." (*Id.* ¶ 7.) At the same time, Plaintiff has not sought compensation through any available channels under New York's regulatory programs and has not filed an inverse condemnation proceeding nor an Article 78 proceeding.

**LEGAL STANDARD**

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

5

For motions brought under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). Though a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013). The court should read *pro se* complaints "'to raise the strongest arguments that they suggest,'" *Kevilly v. New York,* 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir. 2006)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally.") "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Dismissal is justified, therefore, where "the complaint lacks an allegation

regarding an element necessary to obtain relief," and therefore, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations omitted).

## DISCUSSION

Plaintiff raises two claims. The first is a takings clause claim based on the Fifth Amendment and the second is a procedural due process claim based on the Fourteenth Amendment. Although the two claims are interrelated, the Court addresses each claim in turn.

### I. Takings Clause Claim

Plaintiff's first claim is that Fallsburg *de facto* took Plaintiff's Building, denying him just compensation. (Compl. ¶¶ 34-35.) All Defendants argue that this claim must fail, as a matter of law, because it is not ripe for review before this court. They argue that "Plaintiff's failure to avail himself of the meaningful process for review and just compensation at the state level, is fatal to his claims, and warrants dismissal of the entire Complaint." (*See* Defendant Fallsburg and CEO's Mem in Support, ("Fallsburg Mem."), ECF No. 43.) This Court agrees.

The Takings Clause of the Fifth Amendment states that no "private property [shall] be taken for public use, without just compensation." U.S. CONST. amend. V. The Fifth Amendment is applicable to the states through the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S. Ct. 446 (1980). It is "designed to bar [the] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Id.*; *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 123-24, 98 S. Ct. 2646 (1978). It does not prohibit the government's taking of private property but rather, taking without just compensation. *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 105 S. Ct. 3108 (1985).

To sufficiently plead a takings claim, a plaintiff must demonstrate (1) a property interest; (2) that has been taken under the color of state law; (3) without just compensation. *Econ. Opportunity Comm'n of Nassau Cty. v. Cty. of Nassau, Inc.*, 47 F. Supp. 2d 353 (E.D.N.Y. 1999); *Frooks v. Town of Cortlandt*, 997 F. Supp. 438,452 (S.D.N.Y. 1998). In addition, as a prerequisite for proper subject matter jurisdiction, a Plaintiff must establish that the claim is ripe. To do so, a plaintiff must show: "(1) the state regulatory entity has rendered 'a final decision' on the matter, and (2) the plaintiff has actually sought just compensation by means an available state procedure." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002).

Plaintiff's claim fails both on the pleadings, which are far too conclusory to make out a proper claim, and on the jurisdictional requirements. Because the jurisdictional requirements are necessary to confer subject matter jurisdiction, the court addresses those first.

Nowhere in Plaintiff's Complaint or brief does Plaintiff claim: that he availed the state channels that were available for redeeming his Building, that the state regulatory agency rendered a final decision on the matter, or that he ever sought just compensation through an available state procedure. In fact, Plaintiff concedes the opposite. Plaintiff admits that he chose not to file a state claim based on his own economic assessment and cost/benefit analysis of doing so:

> Was I in a position to hire a lawyer for (from my experience) five or eight thousand dollars to initiate an article 78 action? And even if I could have come up with the money (I don't know how), would it have made economic sense. In the four months that I would have had for an article 78 my rent from that unit would have been around $3000. I had no idea at that time how long it would be till I would be able to rent again. Additionally, I don't believe that I had grounds for an article 78. Was I to ask a judge to undo the condemnation? I don't believe any judge would do that (from personal experience, which I would still like to relate, if I have the time). And even if one would, would he award my compensation.

(*See* Plaintiff's Memorandum in Opposition, ("Pl. Mem."), at 9, ECF No. 23, 33, 37.)[2]

---

[2] In addition to raising many counterarguments, Plaintiff attempts to add many new facts in his memorandum opposing Defendants' motions to dismiss. The Court cannot give credence to any of these facts as the Plaintiff is limited to those

As Defendants note, financial hardship is not a valid and recognized reason for not availing oneself of the forms of redress offered. *See Applegate v. Annucci*, No. 16 CV 2187 (VB), 2017 WL 3049555 (S.D.N.Y. July 18, 2017), *appeal dismissed*, No. 17-2486, 2018 WL 816964 (2d Cir. Jan. 9, 2018) (discussing ability to file an Article 78 petition despite indigence). Apart from the paltry excuse that he does not believe a judge would have ruled in his favor, Plaintiff does not adequately explain why he did not make any efforts, let alone any timely ones, to seek compensation for his property at the State level before filing the instant lawsuit, which he filed three years after the "taking" occurred. "[A] claimant cannot be permitted to let the time for seeking a state remedy pass without doing anything to obtain it and then proceed in federal court on the basis that no state remedies are open." *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002).

In *Vandor*, the Second Circuit explicitly explained, as it has on numerous occasions, that under New York State law, Article 78 is a form of proceeding available to compel public officials to comply with their responsibilities. *See id*. ("A takings claim is unripe where "a remedy potentially is available under the state constitution's provision.") (citations omitted); *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 187, 105 S. Ct. 3108, 3117 (1985) ("… a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (holding that Plaintiff's claim was not ripe for federal judicial resolution where there had not been a final decision by the town depriving Plaintiff of all beneficial use of his property.)

---

facts that he set forth in his Complaint. *Brady v. Lynes*, No. 05 CIV. 6540 (DAB), 2008 WL 2276518, at *1 (S.D.N.Y. June 2, 2008).

Since Article 78 is a constitutionally sufficient avenue for State-level redress, and since Plaintiff never initiated an Article 78 proceeding or any inverse condemnation proceeding, and since no other available avenue is cited by Plaintiff, Plaintiff was required to avail himself of State remedies in a timely fashion to satisfy the finality requirement and ripen his claim. Plaintiff did not. Hence, both jurisdictional requirements are fatally lacking, and this Court must, as a matter of law, dismiss Plaintiff's takings claim, with prejudice.

Turning briefly to the pleading deficiencies, as Werlitz notes in his brief, Plaintiff never even properly alleges that he really has suffered from a "taking," let alone one without just compensation. (Werlitz Mem. at 6, ECF No. 36.) While Plaintiff alleges that he has been unable to rent the property since its "condemnation," he never claims that he has lost title to it. (*See* Compl.; Pl. Opp.) Accordingly, Plaintiff has also not properly pleaded that he has lost a property interest under the color of state law as is required to properly make out a takings claim. Moreover, while Plaintiff once states in his complaint that he did not receive "just compensation" for his property, he never pleads enough facts with any detail to color this claim. Hence, this statement is nothing more than a conclusory allegation, wholly insufficient to meet the plausibility standards of *Iqbal* and *Twombly*. *See Twombly*, 550 U.S. at 558. ("a naked assertion…gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitlement to relief.'"). Accordingly, even if the jurisdictional perquisites were satisfactory, Plaintiff's claim would fail on the deficient pleadings.

## II. Due Process Claim

Plaintiff's second claim is that, throughout the condemnation process, Defendants did not provide him with proper notice, communication, or an opportunity to be heard, and therefore, they *de facto* took Plaintiff's Building without proper due process. (Compl. ¶¶ 34-35.)

Defendants argue that there is no procedural due process violation under the Fourteenth Amendment because Plaintiff was not entitled to pre-deprivation process prior to condemning the building for safety reasons and Plaintiff's post-deprivation rights were never violated. (*See* Fallsburg Mem. at 4-7). Defendant Werlitz additionally argues that Plaintiff's due process claims are barred by the same ripeness issues that plague his takings claim as the claims are interrelated. (*See* Werlitz Mem. at 7.) The Court agrees with Defendants on both arguments.

Turning first to Plaintiff's pre and post-deprivation rights, Defendants are correct that it is well-settled that no pre-deprivation process is necessary when government officials temporarily condemn property that they determine to be a danger to the public's safety, especially where adequate post-deprivation remedies are available. *See Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412 (3d Cir. 2008) (holding that no pre-deprivation hearing was required prior to Town condemning apartments overrun with mold.) In *Elsmere*, the Third Circuit explained:

> The Fourteenth Amendment prohibits a state from depriv[ing] any person of life, liberty, or property, without due process of law.... A fundamental requirement of due process is the opportunity to be heard. That opportunity must be granted at a meaningful time and in a meaningful manner. In the typical situation, the hearing should come before the Government deprives a person of his property. This makes practical sense, [f]or when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented. Nonetheless, the Supreme Court has held that, *in special circumstances, a state may satisfy the requirements of procedural due process merely by making available some meaningful means by which to assess the propriety of the State's action at some time after the initial taking. Where there is the necessity of quick action by the State, or where providing any meaningful predeprivation process would be impractical, the Government is relieved of the usual obligation to provide a predeprivation hearing*.

*Id*. (internal citations and quotation marks omitted) (emphasis added).

Indeed, the Second Circuit has also recognized that prompt action taken by a municipality to ensure public safety does not require a pre-deprivation process:

11

> The law should not discourage officials from taking prompt action to insure the public safety. By subjecting a decision to invoke an emergency procedure to an exacting hindsight analysis, where every mistake, even if made in good faith, becomes a constitutional violation, we encourage delay and thereby potentially increase the public's exposure to dangerous conditions. This quandary is exactly what these emergency procedures are designed to prevent, and is the primary reason they are constitutionally acceptable.

*Cantazaro v. Weiden,* 188 F.3d 56, 63 (2d. Cir. 1999). It further explained:

> If an official believes that the public is in immediate danger, he or she should not hesitate to invoke an emergency procedure for fear of being sued, and being liable for damages should his or her decision turn out to be incorrect in hindsight. If procedural due process violations were to be as broadly defined as Plaintiffs–Appellants would define them, in order to avoid the possibility of committing any constitutional violation, an official charged with discretion would be in the anomalous position of almost being forced to hold a hearing to determine whether or not an emergency exists, so as to then determine whether a predeprivation hearing is constitutionally required. This cannot be the proper result.

*Id*. Accordingly, the Court finds it abundantly clear that where there is a genuine public safety concern, the law does not require officials, out of fear of exposure to liability, to assess the appropriate avenue for a Plaintiff to get due process before taking prompt remedial action, especially where post-deprivation procedures are available. *See e.g.*, "*Parratt v. Taylor*, 451 U.S. 527, 539, 101 S. Ct. 1908, 68 L. Ed. 2d 420(1981), *rev'd on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662 (1986) ("The necessity of quick action by the State or the impracticality of providing any meaningful deprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process."); *Deraffele v. City of Williamsport*, No. 15-cv-02186, 2016 U.S. Dist. LEXIS 137950 (M.D. Penn. Oct 3, 2016).

Here, Defendants found numerous safety concerns that warranted the immediate condemnation of Plaintiff's property. For example, the lack of working smoke detectors and exposed wires and broken outlets and circuit breakers alone presented serious safety concerns—

let alone in conjunction with the other dilapidations identified. (*See* Condemnation Notice) (identifying the following deficiencies: "(1) No smoke detectors; (2) Exposed unprotected wiring in the junction box in the bathroom; (3) Bedroom outlets arc when plugged in; (4) Circuit breakers constantly trip; (5) Bedroom windows do not open; (6) Floors in need of repair; (7) Bathroom shows sign of water leaking in at ceiling and outside walls; and (8) Front porch appears to be in failure."). As Defendants note, these are exactly the types of deficiencies that the Town and State laws recognize as serious safety hazards. (*See* Fallsburg Mem. at 5.) Regardless of Plaintiff's excuses for these deficiencies, Plaintiff does not dispute that most, if not all, of these deficiencies existed at the time of his inspection. The crux of Plaintiff's argument really is that he was not afforded an opportunity to remedy these harms prior to the condemnation. But this Court finds that the conditions justified the immediate condemnation and lack of a pre-deprivation hearing.

As the case law shows, Plaintiff was not entitled to a pre-deprivation opportunity to contest or remedy the identified safety concerns. After the condemnation, however, Plaintiff could have remedied the identified harms and/or pursued a hearing. Not only did he have the availability of an Article 78 Proceeding, but he also had the ability to simply correct the identified deficiencies and request a re-inspection—which was expressly communicated to him in the May 13, 2015 letter. (*See* Condemnation Notice) ("If the violation(s) IS corrected, the owner must schedule a re-inspection with the Town of Fallsburg Building Department by calling (845) 434-8811.") The Condemnation Letter further had two pages affixed to it, which provided detailed instructions for how Plaintiff could have pursued a hearing to contest the condemnation order. (*Id*.) Accordingly, given the exigency of the circumstances and the troubling conditions of Plaintiff's premises, he was certainly not deprived of a meaningful process to review the Town's Action.

Procedurally, the Court also finds that Defendants' second argument, regarding ripeness and the interrelatedness of both claims, is compelling. Werlitz argues that because Plaintiff's procedural due process claim arises from the same circumstances as his takings claim, both claims are unripe because Plaintiff never availed himself of his administrative remedies and never sought a final judgment at the state level. (*See* Werlitz Mem. at 7.) This Court agrees.

In *Dougherty*, the Second Circuit examined whether an unripe takings claim would render unripe a related due process claim. 282 F.3d at 88 ("The key issue before us on this aspect of Dougherty's appeal is whether the ripeness test announced in *Williamson* applies to his equal protection and due process claims.") Ultimately, the Court explained that where a due process claim arises from the same operative facts as a takings claim, the ripeness requirement that was set out in *Williamson,* applies to both sets of claims.

Here, Plaintiff's two claims are interrelated and stem from the same set of events, in which Defendants inspected Plaintiff's property and immediately thereafter condemned it without providing him with a meaningful opportunity to contest it beforehand. (*See* Compl. ¶¶ 34-35.) The Court has already explained why Plaintiff's Takings claim is unripe for judicial review. (*See* Part I, *supra*.) Accordingly, it finds that Plaintiff's due process claim is also unripe for review, as a matter of law, and must be dismissed without prejudice.

### III. Miscellaneous Arguments

The Fallsburg Defendants additionally raise the argument that Plaintiff's *Monell* claims against the Town should be dismissed because of Plaintiff's failure to identify a policy, custom, or practice, which caused Plaintiff's alleged injury. (Fallsburg Mem. at 10-11.) Because the Court has no jurisdiction on any of Plaintiff's claims, it need not address this argument in depth at this point, though it notes that Plaintiff's conclusory statement about other unspecified properties also being

condemned is far from adequate to satisfy the Rule 12(b)(6) pleading standards. (*See* Compl. ¶ 38) ("There is also another apartment that was unlawfully condemned in May 2015 by Defendants in a similar manner to the Building in question, but it is not included in this complaint because it is owned by Plaintiff through an LLC entity..."). In addition, as Fallsburg notes, compliance with the New York Property Maintenance Code cannot, as a matter of law, constitute an unlawful municipal policy. (*See* Fallsburg Mem. at 10.) Accordingly, Plaintiff's *Monell* claim is dismissed.

Similarly, Werlitz raises an argument that he is entitled to qualified immunity for any actions he took in his individual capacity because Plaintiff has neither properly alleged an underlying constitutional violation, and because Werlitz acted objectively reasonable in identifying the building deficiencies. (*See* Werlitz Mem. at 8-9.) The Court agrees. Nothing in the allegations suggest that Werlitz acted out of line with his vocational duties in identifying breaches of the various dwelling codes. Moreover, as Werlitz notes, any claims against him in his official capacity are duplicative with the claims raised against Fallsburg and cannot stand. (*Id.* at 9-10.) Accordingly, the claims against Werlitz are appropriately dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED with prejudice. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 32 and 34, enter judgment in favor of Defendants, mail a copy of this Opinion to pro se Plaintiff, show proof of service on the docket and terminate the case.

SO ORDERED,

Dated: February 6, 2019
       White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge